GUARANTY TRUST CO. OF NEW YORK v. CHICAGO UNION TRACTION CO. et al. SAME v. NORTH CHICAGO ST. R. CO. et al. SAME v. WEST CHICAGO ST. R. CO. et al. (three cases).

(Circuit Court, N. D. Illinois, E. D. December 26, 1907.)

Nos. 26,727–26,729.

STREET RAILROADS—SUIT TO FORECLOSE MORTGAGES—REORGANIZATION SCHEME.
Suits were brought to foreclose mortgages on the properties of various street railroad companies in Chicago whose lines had passed by a succession of leases into the possession of a lessee which operated them as a single system. Such suits were consolidated, and receivers were appointed for all of the property. The franchises granted to the mortgagors under which the streets were occupied by most of the lines had expired, and the city passed an ordinance granting a franchise for their use to a reorganized company representing the greater part of the bondholders and stockholders of the mortgagor companies, and in which all were entitled to join, on condition that such company obtained possession of the existing property and accepted its terms by a certain date, but if not, granting such franchise to another company. *Held*, that the court, as the only means of preserving the property as a going concern and thus maintaining its value until foreclosure and sale, had power to authorize its receivers to turn the same over to the reorganized company pending its sale.

## On Petition of Chicago Railways Company.

Gilbert E. Porter, for Guaranty Trust Co. of N. Y. William Burry, for Fidelity Trust Co. of Philadelphia. James C. Hutchins and Frank H. Scott, for Illinois Trust & Savings Bank et al. Frank H. McCulloch, for Merchants' Loan & Trust Co. William J. Calhoun, for North & West Chicago St. R. Co. W. W. Gurley and Arthur Dyrenforth, for Chicago Union Traction Co. Brainard Tolles, for Guaranty Trust Co. of N. Y. Noble B. Judah, for Northern Trust Co. et al. Colin C. H. Fyffe, for Central Trust Co. of N. Y. et al. John R. Montgomery and Louis E. Hart, for Equitable Trust Co. et al. Schuyler, Jamieson & Ettelson, for certain stock and bond holders. Newman, Northrup, Levinson & Becker, for A. G. Becker & Co. et al. Pam & Hurd, for Central Trust Co. of Ill. John A. Rose, for Chicago West Division Ry. Co. et al. Henry Crawford and Charles R. Aldrich, for certain holders of certificates of indebtedness.

GROSSCUP, Circuit Judge. Upon the coming down of the decision of the Circuit Court of Appeals, reversing the former order of this court, that turned over to the Chicago Railways Company the properties now in the hands of the court (158 Fed. 923), an ordinance was passed by the City Council of the City of Chicago, extending until February 1, 1908, the privilege of the Chicago Railways Company to accept the ordinance of February 11, 1907; it being provided, however, in such extension ordinance, that in the event that said ordinance of February 11, 1907, as extended by the ordinance of September 12, 1907, was not accepted within the time fixed, the Chicago City Railway Company and the Chicago City Railroad Company were required to comply with the obligations imposed upon them by the companion ordinance of February 11, 1907, to the Chicago City Railway Company, with respect to the streets covered by said ordinance of the same date to the Chicago Railways Company; that is that the Chicago City Railway Company would have the right and would be obligated to construct, maintain and operate a system of street railways in and upon the streets that otherwise would have been granted to the Chicago Railways Company.

Following this, the Chicago Railways Company presented to Judge Peter S. Grosscup, and Hon. John C. Gray, for their approval, a modified plan of reorganization and readjustment, which plan has been approved; the changes from the old plan being confined chiefly to the raising of the rate of interest of the new bonds to be issued for the old, from four and one-half to five per cent, and the issuing, to the holders of certificates of general indebtedness, of bonds of the new company, instead of the new company notes secured by collateral.

Concurrently with the adoption of this modified plan, suits have been begun, by the trustees under the mortgages, to foreclose the mortgages—both by original bill and cross bill—all now consolidated however, in the original cause. And, upon a showing that the several street car companies which own the lines leased to, and composing the system of Union Traction Company, and which are the mortgagors in the several mortgages, are insolvent, receivers have been appointed—the original receivership having been extended, for that purpose, over such lessor and mortgagor companies; in which foreclosure suits decrees for sale have now been entered.

The ordinance of February 11, 1907, embodied a purpose upon the part of the City of Chicago that the grant therein contained, to use the streets therein named, should go, not to any one of the old companies owning lines comprised in the Union Traction Company system, nor to a new company having no connection with the Union Traction Company, but to the Chicago Railways Company as a medium through which the interests now concerned in the Union Traction Company's system, might be given the opportunity, upon reorganization and readjustment in accordance with the conditions stated, to continue their street railway relations to the city. The relation, therefore, of the Chicago Railways Company to the several interests composing the Union Traction Company system, is not that of competitor or rival, but that of intermediary, through which

existing interests may continue to live.   And this completely distinguishes the matter raised by the petition before the court, from the many cases arising between rival companies that have been brought to my attention.

Stripped of mere form, and reduced to its substance, the matter now before the court are these suits to foreclose the several mortgages upon the Union Traction system, and the decrees therein, the mortgagors being insolvent; and the petition before the court is a petition, pending such foreclosure, to turn over the existing property of such mortgagors, to the Chicago Railways Company, the medium through which alone the bondholders, the stockholders, the creditors, and all the interests of the Union Traction system can obtain a continued right to the use of the streets, so that the foreclosure, when it comes, will not be confined to a sale of the property as it exists, bereft of any right of the purchaser, to continue in the streets, but a sale of such property plus a right to the continued use of the streets, if such purchaser be the Chicago Railways Company.   The petition, therefore, is clearly in the interest of the mortgagees and creditors in the foreclosure proceedings; giving, if granted, to the corpus of the mortgaged property a value that it would not have if the petition were denied.   Indeed, unless the ordinance of February 11, 1907, be accepted, through the medium of the Chicago Railways Company, but in the real interest of all the interests embraced in the Union Traction system, so that the mortgaged property may be sold as a going concern, the foreclosure sale would result in very severe losses to the mortgagees.

That the granting of this petition may impair in some degree the mortgagors' present right to the use of the streets, and, in that way, affect to some extent some of the abstract legal rights of the mortgagees may be admitted.   But all this is overbalanced, by the infinitely greater counter objection, that unless the petition is granted, the mortgagees' rights and advantages will be almost wholly destroyed; so that the question is not one of avoiding a stated disadvantage, but of choosing between two courses both of which have their disadvantages; and in such situation, where the disadvantage on the one hand is so clearly and distinctively greater than would be the disadvantage on the other, neither the power, nor the duty of the court to exercise fair business sense ought to be open to question.

It ought to be said in passing that the case made by this petition is legally different from the case made by the former petition, and the order thereon, reversed by the Circuit Court of Appeals.   In that case the danger apprehended, that the property would be lost unless the ordinance of February 11, 1907, was accepted, however conclusive the reasons therefor were, rested in inference only; in this case the City Council, by the extension ordinance of September last, has made certain that event.   In the former case, the proceeding before the court was that of a creditor only—the trustees of the bondholders and other lien holders being in, in invitum; in the present case the trustees of the bondholders have come into court, themselves invoking the jurisdiction of the court to foreclose their security.   In the former case the order asked for was in the nature of an order preservative of the corpus of the property to be sold, but no sale had yet been asked by those who had a right to foreclose.   In this case foreclosure is asked;

is asked by those who have the right to ask it; and is ordered by the decree of the court. The order prayed for, therefore, is not only preservative of the corpus, but strictly pertinent. to the foreclosure proceedings now pending.

To sum up the matter in a sentence, the ordinance of February 11, 1907, is a grant, by the city, in the interest of the bondholders, creditors, and stockholders of the old companies, as their interests are readjusted, of a settled "right of way" for the future; and this petition, as an adjunct to the suit to foreclose, is to so unite such right of way with existing tangible property that the whole will constitute a going street railway property, immensely more valuable as the corpus on which to rest the bonds and debts, and a foreclosure sale, than if these different elements remained apart. But whether any bondholder or creditor shall accept this plan of union is here, as it was in the August order, his own question; for he remains at liberty either to accept his aliquot part in the elements thus united, or to reject it, and look for his return in that separate element on which his security otherwise rests.

The order prayed for will be entered.