(No. 11932.—Reversed and remanded.)
JOSEPH KING *et al.* Plaintiffs in Error, *vs.* URIAH T. S.
RICE *et al.* Defendants in Error.

*Opinion filed October 21, 1918.*

1. PLEADING—*when a bill in equity is not multifarious.* Multifariousness is the improper joining of distinct and independent matters in one bill or the improper joinder of parties not connected with the controversy in its legitimate scope, but a bill is not multifarious though the interests of the defendants are not identical and the relief prayed is not the same as to all of them, where each one has an interest and the matters involved are so connected that complete relief cannot be granted if they are not parties.

2. SAME—*bill not multifarious when matters are joined merely to prevent multiplicity of suits.* The fact that two or more distinct matters are joined in a bill merely to prevent a needless multiplicity of suits, where no defendant is prejudiced or inconvenienced thereby, does not render a bill multifarious, as it is the aim of equity to administer complete relief in one suit although to do so requires an investigation of several matters and relief consisting of different elements.

3. SAME—*circumstances of each case must determine whether bill is multifarious.* There is no inflexible rule by which to determine whether a bill is multifarious but the circumstances of each particular case must govern.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Moultrie county; the Hon. GEORGE A. SENTEL, Judge, presiding.

HENLEY & DOUGLAS, and E. J. MILLER, for plaintiffs in error.

F. M. HARBAUGH, for defendant in error Harpster.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is a writ of error to review a judgment of the Appellate Court for the Third District affirming a decree of the circuit court of Moultrie county sustaining a demurrer

to and dismissing a bill in chancery. Plaintiffs in error, Joseph King and Emma King, were complainants in the bill, and alleged therein that Joseph King on December 9, 1912, and for many years prior thereto, owned sixty-five acres of land described in the bill; that it was all contiguous and was occupied by complainants, who are husband and wife, as their homestead; that on or about January 17, 1909, they gave a trust deed on said land to secure a loan of $2500 procured from U. T. S. Rice, of Mattoon, Illinois; that complainants executed a note for said $2500, payable to themselves, endorsed the same and gave a trust deed on the land to Rice, as trustee, to secure said note; that all the papers were prepared by Rice; that the note was due five years after date, with six per cent interest, payable semi-annually, and evidenced by coupons attached to the note and payable at the office of Rice; that the trust deed given to secure said note was recorded on the 25th day of January, 1909. The bill further alleges that about December 1, 1912, complainants sold twenty-six acres off of said sixty-five acres to William E. Harpster and executed to him a warranty deed for the premises sold; that Harpster agreed to pay $2000 for the land by paying said sum on the $2500 note and trust deed, thereby reducing that indebtedness to $500; that Harpster filed his deed for record December 9, 1912, and went into possession of the land conveyed by said deed. The bill alleges Harpster attempted to comply with his agreement to pay $2000 on the indebtedness referred to; that he paid Rice at his office $2000 December 17, 1912, whereupon Rice executed and delivered to Harpster a release purporting to release the twenty-six acres of land from the lien of the trust deed to secure the $2500 note, which partial release was filed in the recorder's office December 17, 1912; that shortly subsequent to the sale to Harpster and the payment by him to Rice complainants went to the office of Rice and arranged to borrow an additional $400 and to pay the remainder of the $2500 note

and trust deed and secure the release of the same on all the land; that for that purpose complainants executed their note for $900, $500 of which was payment of the balance on the $2500 indebtedness and $400 they received in money; that this $900 note was secured by a mortgage on the thirty-nine acres of land owned by the complainants, which was duly filed for record in the recorder's office, whereupon Rice promised and agreed to release the land from the $2500 trust deed; that complainants receiving no notice as to the payment of interest on the $2500 believed the same was paid in full and never knew otherwise until in July, 1913, when they learned Rice was hopelessly insolvent; that he did not have the $2500 note and trust deed in his possession at the time the $900 note and mortgage were executed, and they then learned for the first time that he did not release the $2500 trust deed on the thirty-nine acres owned by complainants; and that he was not the owner nor in possession of the note or trust deed when Harpster paid him the $2000 is claimed by the other parties mentioned in the bill. The bill alleges that since the failure of Rice complainants have been told that the State National Bank of Mattoon, Illinois, has in its possession the $2500 note and trust deed and claims to own the same as an innocent purchaser for value prior to the time Harpster paid said $2000, and the bank claims the full lien of the note and trust deed against complainants' thirty-nine acres; that the bank also claims to be the owner and holder of the $900 note and mortgage, thus claiming a double lien for the same debt; that Augusta Miller, of Mattoon, claims to have an interest in the $2500 note and trust deed, but what her interest is complainants are not advised. The bill alleges Rice had no authority to make the partial release of the $2500 trust deed, that the same is null and void and that the trust deed is a lien upon the entire sixty-five acres; that Rice has been adjudged an involuntary bankrupt in the district court of the United States for the eastern district of Illinois and Ira Powell has been

appointed trustee of his bankrupt estate. The bill alleges Rice was without authority to execute the partial release and receive $2000; that complainants have never received anything for said twenty-six acres of land, which in equity would belong to complainants, or Harpster would owe them the consideration therefor, $2000, with lawful interest from the date of the deed. The bill further alleges that Harpster has incumbered the twenty-six acres by a mortgage to Robert M. Butler and Ozona Butler to secure $2480; that although the mortgage to the Butlers purports to be a lien on said twenty-six acres, yet in truth and in fact the release by Rice of said land from the $2500 trust deed having been made without authority, the mortgage of the Butlers is subject to said $2500 trust deed.

The bill is very lengthy, and we deem it sufficient to say, without further setting out its allegations in substance, that the right of complainants' claim to relief is based upon the theory that the release of the twenty-six acres by Rice was made without authority and is void; that $500 of the $900 note and mortgage represented $500 of the indebtedness secured by the $2500 trust deed, but the bank claiming to own both notes and mortgages insisted they were both valid and refused to release them or either of them; that Harpster failed to pay the $2000 purchase money for the twenty-six acres to any person legally entitled thereto.

The relief prayed for is, (1) that the $2500 note, and the trust deed securing it, held by the State National Bank of Mattoon and Augusta Miller, be canceled and released of record; (2) if that relief should not be granted as to any part of said $2500 note and trust deed, then that complainants be decreed a credit of $500 on the $900 note and mortgage; (3) that the court require by its decree that Rice, trustee in the trust deed, Powell, trustee in bankruptcy for Rice, the Mattoon Bank and Augusta Miller, or such of them as are proper persons to do so, execute a release of the $2500 trust deed and the note secured thereby, or

of the $900 note and mortgage, as equity might require; (4) that the court determine what, if any, interest the Mattoon Bank has in said two mortgages; (5) that the court ascertain and declare what, if any, payments Harpster had made on the $2500 note and trust deed, and whether Rice had power to execute a partial release, and if not, that the court determine the status of the mortgage of Robert M. and Ozona Butler; and (6) if Harpster had not paid $2000 on the $2500 note, that he be decreed to comply with his agreement in that behalf, and that the alleged clouds be removed from complainants' title. There was also a prayer for general relief.

The bill was demurred to on the ground that it was multifarious, and on that ground the demurrer was sustained and a decree entered dismissing the bill, which was affirmed by the Appellate Court, so that the only question involved for our determination now is whether the bill was obnoxious to demurrer on the ground that it was multifarious.

"Multifariousness may be defined as the improper joining of distinct and independent matters in one bill or the improper joinder of parties not connected with the controversy in its proper and legitimate scope. If the situation is such that the court will tolerate the joining of several different matters in the one suit, as it always will when this is absolutely necessary to the doing of complete justice and the proper solution of the main controversy, the bill is not said to be multifarious howsoever complex it may be." (10 R. C. L. 429.) The mere fact two or more distinct matters are joined in a bill merely to prevent a needless multiplicity of suits, and which in nowise prejudice or inconvenience a defendant or cause him additional expense, does not render a bill in chancery multifarious. (*Stephens v. Collison*, 249 Ill. 225.) It is the aim of equity to administer complete relief in one suit although to do so requires an investigation of several matters and relief consisting of different elements. "The court will in a single suit inves-

tigate and determine all questions incidental to the determination of the main controversy and will grant all relief incidental to the accomplishment of the main object of the bill." (16 Cyc. 244.) Courts of equity allow great liberality in joining several matters in one bill when all the causes of action grow out of the same transaction, all the defendants are interested in the same rights and the relief against each is of the same general character. It is not essential that the parties each have an interest in all the matters involved in the suit, but it is sufficient if they each have an interest in some matter involved in the suit and are connected with the others. Where the separate matters alleged and relief prayed are separate and distinct in character they should not be joined in one bill. (10 R. C. L. 430-434.) There is no inflexible rule to determine whether a bill is multifarious but the circumstances of each particular case must govern, (*First Nat. Bank* v. *Starkey,* 268 Ill. 22,) and where the grounds of the suit against the defendants are different, each being sufficient in itself to sustain a bill and requiring different remedies, the bill will be deemed multifarious. The bill in this case, tested by the principles laid down in the authorities, must be held to not be multifarious.

While the interests of all the parties are not identical and the relief prayed is not the same as to all the defendants they each have an interest in the matters involved and are so connected that complete relief could not, in any event, be granted without their being made parties. No prejudice could result to anyone by joining all the defendants in one action, and equity favors avoiding a multiplicity of suits.

In our opinion the court erred in sustaining the demurrer to the bill. The judgments of the Appellate and circuit courts are reversed and the cause remanded to the circuit court, with directions to overrule the demurrer.

*Reversed and remanded, with directions.*