(No. 22695

EDWIN W. ASHTON *et al.* Appellants, *vs.* WINFIELD N. MACQUEEN *et al.* Appellees.

*Opinion filed June 14, 1935—Rehearing denied October 2, 1935.*

ORR and SHAW, JJ., dissenting.

HAROLD RIVKIN, and SILVESTER E. QUINDRY, for appellants.

J. S. DUDLEY, for appellees.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Edwin W. Ashton, Lillian Ashton, his wife, and six other persons, filed a second amended bill in the circuit court of Cook county against Winfield N. Macqueen, Amanda H. Macqueen, his wife, Lily M. Omo, J. S. Dudley, and others, for partition and an accounting. The original suit was filed prior to the effective date of the new Civil Practice act. The defendant Dudley filed his separate demurrer. The other defendants named interposed general and special demurrers, alleging specially that the bill was multifarious. All demurrers were sustained, the complainants elected to abide by their pleading, and the chancellor entered a decree dismissing the bill for want of equity. From that decree the complainants prosecute this appeal.

The complainants allege that they, together with other persons to them unknown, are the owners in fee simple of an undivided equitable interest as tenants in common of a certain described parcel of real estate in the city of Chicago, and that they derived title as equitable owners in the following manner: On October 22, 1926, Henry Weckerlin and his wife, who then owned the property, executed bonds amounting to $55,000, with interest at six per cent, and secured their payment by a trust deed in the nature of a mortgage on the property in question. Winfield N. Macqueen, one of the defendants, was then managing a domestic corporation known as W. N. Macqueen & Co., which underwrote the bonds. Ownership by the complainants of a portion of said bonds aggregating $6600 is set forth, and a further allegation made that although numerous persons unknown to them are the legal owners and

holders of other bonds of the same issue, the names of these purchasers and unknown owners are in the exclusive possession of Winfield and Amanda H. Macqueen, two of the defendants, who as partners were holding themselves out as underwriters of real estate bonds and as successors to W. N. Macqueen & Co., a corporation dissolved January 26, 1928.

It was further alleged that on April 23, 1931, the amount of bonds outstanding had been reduced by prepayments to $47,500. The complainants charge that on that day Winfield N. Macqueen, the trustee in the deed of trust which secured the bond issue, sent a letter to the bondholders advising them of a default in the payment of the bonds and suggesting the advisability of the prompt deposit of all bonds with him. For that purpose a deposit agreement was enclosed with each letter. This agreement was executed by the complainants and by the owners of the remaining bonds. It provided, among other things, for full representation of their interests by the trustee. "In the event the said real estate be sold pursuant to decree of court in foreclosure proceedings," the deposit agreement recited, "the said trustee is authorized to bid at such sale, and, if there be no higher and better bid, to become the purchaser at such sale and to receive and hold the certificate of sale issued in that behalf and any deed that may be issued thereupon for the equal and proportionate use and benefit of said bondholders, their heirs and assigns, in accordance with their respective interest therein, and to use and apply the said bonds and coupons towards payment of the purchase price in lieu of cash to the extent of the interest of the said bondholders respectively in the proceeds of such sale and to receipt therefor as agent and trustee of said bondholders." The trustee was authorized, if he should become such owner, to sell and convey the premises in his discretion, and to use the moneys obtained from such sale or from the management of the premises for the

purpose of re-imbursing himself for all proper costs, charges and necessary expenses, and to distribute the remainder ratably among the depositing bondholders.

Additional allegations narrate the institution of foreclosure proceedings in the circuit court of Cook county, resulting in a decree of foreclosure and a sale of the premises; that at the sale the trustee bid in the property in the name of Lily M. Omo, his sister-in-law; that she received a master's certificate and subsequently a master's deed, and that she took possession of the premises as the constructive trustee for the equitable owners, namely, the complainants and other bondholders similarly situated. It is next set forth that the complainants are desirous that partition of the premises be made among the several parties thereto according to their respective rights and interests if the property can be divided without manifest injury to the parties interested, and if not, that it should be sold and the proceeds divided *pro rata.*

The bill sets forth as another cause of action against Winfield N. Macqueen certain alleged violations of his duties to protect the interests of the bondholders in connection with a lease, the non-payment of taxes and the procurement of an assignment of rents on the premises, and their collection and improper application for the benefit of himself and his wife. Specifically, the complainants charge that on November 22, 1926, Henry Weckerlin and his wife executed a second mortgage lien for $15,000 on the premises, which was also underwritten and sold by W. N. Macqueen & Co.; that of this sum the underwriter deducted $3000 as commissions; that the People's Mortgage Company became possessed of the $15,000 note from W. N. Macqueen & Co.; that the trust deed securing it was assigned to the former; that the People's Mortgage Company, however, refused to pay for the note; that thereupon J. S. Dudley, one of the defendants and who was the trustee's solicitor who foreclosed the trust deed securing the

first mortgage, took up the second mortgage note and later transferred it to Amanda H. Macqueen, and that fees of $5000 and $350 were received by Dudley and Macqueen in connection with the foreclosure for their services as solicitor and trustee, respectively.

Further allegations are, that in fraud of the rights of the complainants and other bondholders Macqueen and Dudley violated their fiduciary duty, and, without notice to any of the bondholders, at the foreclosure hearing permitted Amanda H. Macqueen to prove up the second mortgage and $13,462 due her under it for principal, interest and a solicitor's fee. Macqueen, as trustee, it is alleged, disregarded his fiduciary duties by bidding in the property at the foreclosure sale in the name of his sister-in-law for $61,500, despite the fact that the master found the total amount due on the first mortgage was $52,301.30; that in further violation of his duty as trustee he obtained a deficiency decree for $7642, which he afterwards collected; that when he bid in the property at the sale he paid a large part of the purchase price with the bonds of the complainants and other bondholders; that the moneys collected under the assignment of rents previously mentioned were also applied on the purchase price; that Macqueen wrongfully paid such moneys to his wife, and that Dudley, with full knowledge of the trustee's wrongful acts and as his attorney and legal adviser, became liable as a party thereto. Diversion of the income from the property by Winfield and Amanda H. Macqueen, and Lily M. Omo since the master's sale, is also charged.

Concluding allegations are, that the trust involved provides no definite time for the sale of the property and the termination of the trust; that in consequence there has, in fact, been no equitable conversion, and that the bondholders should be decreed to be vested with undivided interests in the property and to have the equitable title thereto; that the trust, if continued, would inure to the sole benefit of

the trustee and should therefore be terminated; that the trustee and his solicitor should not be allowed to retain the fees paid them from the income of the property, since the services rendered were to the detriment of the bond-holders and for the sole benefit of themselves, Amanda H. Macqueen and Lily M. Omo.

The relief sought is (1) that Winfield N. Macqueen be compelled to account for rents and that he be surcharged for all amounts improperly received by him in the fore-closure proceedings and for damages to the bondholders owing to his breach of duty as trustee; (2) that Dudley be required to account, as trustee *ex maleficio,* for the fee received by him as Macqueen's solicitor; (3) that Amanda H. Macqueen be compelled to account for the amounts received by her individually and as a partner of her husband; (4) that Lily M. Omo be decreed to be the holder of the title in trust for the use and benefit of the bondholders, and that the rights and interests of the bondholders and certificate holders may be found and decreed to be in the proportion which their holdings of the bond issue in the premises bore to the amount of outstanding bonds at the time the foreclosure was filed; (5) that the trust be terminated by sale if the property is not susceptible of division, and, in the alternative, that if prevailing economic conditions render a sale detrimental to the interests of the equitable owners, the court shall take jurisdiction of the *res,* remove Macqueen as trustee and compel Lily M. Omo to convey the premises to a new trustee to be appointed by the court, with certificates of beneficial interest to issue to the owners of the equitable title to the premises; (6) that the complainants be reimbursed for their fees and expenses, and (7) for general relief.

By a separate petition ancillary to the bill the complainants sought discovery as to the names necessary to the relief prayed for, and, in particular, to enable them to set forth correctly the respective interests of the various bond-

holders and to make them additional defendants. The petition for disclosure was denied.

A preliminary question is presented which requires initial consideration. The defendants assert that a freehold is not involved in the litigation, and that, in consequence, this court lacks jurisdiction of the present appeal. A freehold is involved where either the necessary result of the judgment or decree is that one party gains and the other loses a freehold estate, or where the title to a freehold is so put in issue by the pleadings that the determination of the case necessarily involves a decision with respect to the ownership of the real estate in question. (*United Electric Coal Co.* v. *Keefer Coal Co.* 338 Ill. 288; *Lederer* v. *Rosenston,* 329 id. 89; *Burroughs* v. *Kotz,* 226 id. 40.) It will be observed that this familiar rule consists of two independent and separable parts. Of these the latter is, that a freehold is involved, within the meaning of the constitutional and statutory provisions, where the title to a freehold is so put in issue by the pleadings that the decision of the case necessarily involves a decision of such issue although the judgment or decree does not result in one party gaining or the other losing the estate. (*Sanford* v. *Kane,* 127 Ill. 591.) In the case last cited the defendant in error placed reliance on a statement in *Chicago, Burlington and Quincy Railroad Co.* v. *Watson,* 105 Ill. 217, that a freehold is never involved unless the primary object of the suit is a recovery of a freehold, and the judgment or decree will, as between the parties, result in one party gaining and the other losing his estate. "As applied to the facts in that case," this court said, "the test laid down was doubtless correct, but it is manifest from repeated decisions of this court both prior and subsequent to *Chicago, Burlington and Quincy Railroad Co.* v. *Watson* that cases may often arise where it can have no application." Illustrative cases in which this court has entertained jurisdiction where neither party has gained or lost a freehold are *Illinois Cen-*

*tral Railroad Co.* v. *Hatter,* 207 Ill. 88, *Piper* v. *Connelly,* 108 id. 646, and *Monroe* v. *VanMeter,* 100 id. 347.

It is established that this court has exclusive jurisdiction in the review of partition cases involving real estate. (*Hardin* v. *Wolf,* 318 Ill. 48; *Wilson* v. *Dresser,* 152 id. 387; *Ames* v. *Ames,* 148 id. 321; *LeMoyne* v. *Harding,* 132 id. 78; *Bangs* v. *Brown,* 110 id. 96.) The second amended bill charged that although the legal title is in Lily M. Omo the equitable title is in the complainants and other former bondholders and that the complainants are desirous of partition. These allegations put in issue the question whether the complainants and other bondholders were owners of an undivided equitable interest and entitled to a partition of the premises, or to a judicial sale if partition could not be made. The jurisdictional question is thus narrowed to the determination of whether the owners of an equitable estate in land may maintain partition. If so, it follows that the suit was properly instituted and that a direct appeal lies to this court.

Partition is permitted to equitable owners where the title is in a trustee, if no definite time is set when the property shall be sold and the trust terminated. (20 R. C. L. p. 752; *Fox* v. *Fox,* 250 Ill. 384.) The facts in the case cited closely parallel those in the present case. The contention was there urged that as the complainants did not have the legal title they could not maintain partition proceedings. The decision of this court was to the contrary. We are of the opinion that the appeal in the present case was properly prosecuted to this court. The defendants' contention that a freehold is not involved cannot be sustained.

The defendants contend that the complainants made no attempt to comply with the requirements of the statute governing partition proceedings, and particularly urge that all of the parties alleged to have an interest in the premises are not made parties to the proceeding. It is true that the general rule in partition proceedings is that it is neces-

sary to make all persons having any interest in or lien upon the premises parties to the proceeding, (*Barr* v. *Barr,* 273 Ill. 621; *Deniston* v. *Hoagland,* 67 id. 265;) and want of necessary parties is a matter of substance and on demurrer is fatal. (10 R. C. L. sec. 242, p. 269.) The second amended bill here charged, in substance, that the names of such owners were unknown to the complainants but were known to the defendant Winfield N. Macqueen. Section 7 of the Partition act (Cahill's Stat. 1933, chap. 106, p. 2105; Smith's Stat. 1933, p. 2113;) provides that where there are persons interested in the premises whose names are unknown the same shall be so stated in the bill. The other equitable owners and tenants in common were made defendants to the proceeding as unknown owners. This practice is authorized by section 8 of the Partition act. The complainants further requested permission to add the names of such other owners as parties defendants and to be so incorporated in the complainant's second amended bill when the names shall have been obtained from the defendant Winfield N. Macqueen. The second amended bill was not subject to the charge of failure to make all necessary parties defendants thereto. Moreover, in the present case the bill alleged facts justifying an accounting and prayed for that relief in addition to a prayer for partition, and there was no want of necessary parties as to that feature of the bill. It is the rule that when a bill sets forth various claims for relief in a court of equity and the defendant files a general demurrer, the demurrer should be overruled if any of the claims therein set forth be proper for its jurisdiction and consideration. *Gooch* v. *Green,* 102 Ill. 507; *Snow* v. *Counselman,* 136 id. 191.

Other contentions are made by the parties. Of these the principal one which requires consideration is the question whether the second amended bill was multifarious and therefore vulnerable to a special demurrer. Precise rules for determining whether bills are multifarious cannot be

laid down. The facts and circumstances in each particular case govern. (*Roney* v. *Chicago Title and Trust Co.* 354 Ill. 144.) Multifariousness has been defined as the improper joining of distinct and independent matters in one bill, or the improper joinder of parties not connected with the controversy in its proper and legitimate scope. Courts of equity, however, will always, when necessary, in order to do complete justice in the main controversy, tolerate the joining of several different matters in one suit, and the bill in such case, irrespective of its complexity, will not be multifarious. (*Roney* v. *Chicago Title and Trust Co. supra; King* v. *Rice*, 285 Ill. 123.) The mere fact that two or more distinct matters are joined in a bill solely to prevent a multiplicity of suits and which in nowise prejudice or inconvenience a defendant or cause him additional expense, and where the causes of action grow out of the same transaction and all the defendants are interested in the same rights and the relief against each is of the same general character, or if they each have an interest in some matter involved in the suit and are connected with the others, does not render a bill multifarious. *King* v. *Rice, supra; Stephens* v. *Collison*, 249 Ill. 225.

In the present case the bill prays, along with and as a part of the prayer for partition, the termination of the trust. The allegations, which under the demurrers must be taken as true, show that when the complainants and other bondholders deposited their bonds with Macqueen, the trustee, he accepted them under an express trust to use and apply them towards payment of the purchase price of the mortgaged property. The mere fact that the bill contained a double aspect does not render it demurrable. Although a complainant may not allege two inconsistent states of fact and seek relief in the alternative, he may state the facts and ask alternative relief according to the conclusions of law which the court may draw from them. The complainants have an interest in all of the matters

contained in the bill although all of the defendants are not necessary parties to every aspect of the litigation. In particular, the defendant Dudley is only interested in the question of a solicitor's fee which he is charged with wrongfully obtaining. W. N. Macqueen is directly interested in all the matters charged. His wife is affected by the allegations charging her with obtaining money out of the property to satisfy an indebtedness secured by a second mortgage. Lily M. Omo is, of course, affected as the trustee holding the legal title to the property involved. All of the charges clearly arose out of a connected transaction and by combining the entire matter in one proceeding a multiplicity of suits is avoided. Accordingly, the complainants enjoyed the right to bring the different persons having separate interests in independent matters but connected with or arising out of the principal object of the suit before the court as defendants in this proceeding. *King* v. *Rice, supra; Hutson* v. *Wood,* 263 Ill. 376; *Stephens* v. *Collison, supra.*

The second amended bill sought an accounting from the defendant Dudley on the theory that he was a trustee *ex maleficio* as to the attorney or solicitor's fee paid him for his services in the foreclosure of the trust deed. It is not charged that the amount of the fee is unreasonable, excessive, or that the amount thereof was in anywise dependent upon the amount that the property brought at the foreclosure sale. A trust *ex maleficio* arises out of positive fraud and misconduct, only. There must be some element of intentional misconduct on the part of the alleged trustee. (*Ryder* v. *Ryder,* 244 Ill. 297; 3 Pomeroy's Eq. Jur. sec. 1044.) No citation of authorities is necessary to support the statement that fraud is not presumed, and statements by way of general conclusions of fraud are not sufficient in a pleading. The charges made by the second amended bill against the defendant Dudley were not suffi-

cient to require him to answer the same, and the decree of the circuit court sustaining his demurrer was correct.

The second amended bill was not obnoxious to the demurrers interposed by Winfield N. Macqueen, Amanda H. Macqueen and Lily M. Omo. It necessarily follows that the chancellor also erred in denying the petition for disclosure of the list of bondholders. The names of the other bondholders are material to the issues in this case because the separate interests of the various bondholders cannot be correctly described without the disclosure sought.

The decree of the circuit court of Cook county is affirmed in so far as it sustained the demurrer of the defendant Dudley but is reversed in the holding there made that the second amended bill was subject to the demurrers of the defendants Winfield N. Macqueen, Amanda H. Macqueen and Lily M. Omo and the cause is remanded to that court, with directions to overrule the demurrers interposed by the three defendants last named and to enter an order requiring such defendants to show cause why they should not, as requested by the complainants, produce the names, addresses and amounts held by each, of all the legal holders and owners of the certificates issued by Macqueen, as trustee, on the deposit of the bonds with him.

*Affirmed in part, reversed in part*
*and remanded, with directions.*

Mr. JUSTICE ORR, dissenting:

I do not believe that a freehold is involved such as would give this court jurisdiction on direct appeal. We have repeatedly held that to confer jurisdiction on direct appeal to this court the freehold must not only have been involved in the suit but must also have been involved in the question to be determined on appeal. (*Miller* v. *Kensil,* 223 Ill. 201, and cases cited.) Here there is nothing in the abstract to show that a freehold is involved. There is no assignment of errors upon the record—at least none was

abstracted. If the notice of appeal was intended to present the question of a freehold it also was not abstracted. The principal questions involve the sufficiency of the pleadings. It was not claimed by complainants that any of the defendants asserted a paramount title or that the present title was not held in trust. For these reasons a freehold does not appear to be primarily involved so as to give this court jurisdiction, and the cause should have been transferred to the Appellate Court.

Mr. JUSTICE SHAW concurs in this dissenting opinion.