Edward O. Tudor, as Successor Trustee, Appellee, v. Russell Firebaugh, Individually and as Alleged Trustee, et al., Defendants. John T. Brown et al., Constituting the Consolidated Bondholders' Committee, Appellants.

Gen. No. 40,644.

Heard in the third division of this court for the first district at the April term, 1939. Opinion filed February 14, 1940.

WHITTY & McGAH and ABRAMS, SHERMAN & LEWIS, all of Chicago, for appellants; LOUIS A. SHERMAN and IRVING S. ABRAMS, of counsel.

ARTHUR ABRAHAM, of Chicago, for certain appellee.

DAVID F. MATCHETT, JR., of Chicago, for certain other appellee.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

On August 20, 1934, E. Ray Grant, claiming to be the successor trustee to Russell Firebaugh, filed his suit for an accounting against Russell Firebaugh, alleging in said complaint that on November 4, 1931, a decree of foreclosure was entered on trust deed recorded as document No. 10,102,408, and that at the sale Russell Firebaugh, as trustee under the terms of said trust deed, bid in for said property without the production of any bonds or the payment of any money; that a master's certificate of sale was issued to said Russell Firebaugh and that subsequent thereto a master's deed was issued to said Russell Firebaugh as trustee for and on behalf of all bondholders secured by said trust deed recorded as document No. 10,102,408, as aforesaid; that said Russell Firebaugh had failed to account for money collected in connection with the premises involved herein.

It further appears that during the pendency of this suit, on December 7, 1934, E. Ray Grant resigned as successor trustee, and in accordance with the provisions of said trust deed the Consolidated Bondholders' Committee who were holders of the bonds in excess of 51 per cent of the total outstanding bonds secured by said trust deed, appointed Edward O. Tudor as successor trustee, which appointment was confirmed by the court by decree entered January 17, 1935; that the decree recites that the court "retains jurisdiction for the purpose of further instructing the Successor Trustee in the administration of his trust."

It further appears that on January 21, 1935, Russell Firebaugh conveyed and quitclaimed all right, title and

interest in said premises involved herein which he acquired as trustee to Edward O. Tudor, as successor trustee; that subsequently on April 29, 1936, Edward O. Tudor, successor trustee, filed a petition in this accounting proceeding (which we gather is the instant case), alleging that he is the duly qualified and acting successor trustee; that various questions have arisen in connection with the administration of the trust, and praying that the court instruct him with respect to his rights, powers and duties, and that the court may determine a plan for exchange of bonds for certificates of beneficial interest in the trust. To this petition the Consolidated Bondholders' Committee, on April 30, 1936, filed their answer setting forth that they hold a majority of the bonds secured by the trust deed and that the court should instruct the trustee as' to his powers in connection with said trust.

It further appears that on May 16, 1936, the court entered an order referring the petition and answer to a master in chancery, where the said petition lay in a state of somnolence and no attempt was made to present the master's report or take any action in connection with the matter until the 30th day of September, 1938, being 2½ years after the filing of the petition and not until the filing of a suit for partition by one of the owners and holders of the bonds secured by this trust deed.

It further appears that on September 30, 1938, Tudor, the plaintiff, presented to the court the master's report on said petition, together with the decree confirming the same. The Consolidated Bondholders' Committee objected to the entry of the decree, and asked leave to file exceptions, which prayer the court denied and entered a decree confirming the master's report.

In appellant's brief it is not stated whether or not they appeared before the master and filed objections.

On September 30, 1938, Edward O. Tudor presented to the court the master's report on said petition and the decree confirming same. Said decree contained the following provisions:

1. That Edward O. Tudor, as successor trustee, has acquired title to the premises involved.

2. That the said Edward O. Tudor shall hold said premises in trust for a period not to exceed fifteen (15) years from the date of the decree.

3. That the interests of the bondholders shall constitute a beneficial interest in the income only and that they shall have no legal or equitable claim to the property.

4. That the trustee shall issue certificates of beneficial interest to all bondholders in the form provided in the decree.

5. Appointing John W. Guskay, John T. Brown and William A. Kessler as trust managers.

6. Providing that the trustee or trust managers cannot be removed by a majority of the bondholders, except for cause.

7. Fixing fees in the sum of $2,500 for attorney for Edward O. Tudor, successor trustee, for services in perfecting title and for representing him in these proceedings to construe the trust.

8. Fixing fees in the sum of $2,000 to Consolidated Bondholders' Committee.

9. Fixing fees in the sum of $500 to Edward O. Tudor, successor trustee, for services in connection with these proceedings and for the issuance of certificates of beneficial interest.

10. Fixing fees in the sum of $750 to William S. Stahl, for services in connection with this proceeding.

11. Fixing master's fees in the sum of $750.

12. Authorizing the successor trustee to execute a first mortgage in a sum sufficient to pay all fees, costs and taxes.

The position of the plaintiff appellee is:

1. Interveners having by their pleadings admitted the necessity and propriety of Tudor's petition for the construction of the trust, having appeared and testified in favor of the petition, having worked out and presented the very plan of reorganization adopted, having failed to object to the master's report, cannot now be heard to object to the decree of September 30, 1938.

2. The decree of January 17, 1935, to which the interveners were personally parties and to which all of the bondholders were parties by representation, specifically determines that the bondholders have no right to partition.

3. The court of equity has ample powers to construe the terms of the trust in question and to provide a fair and equitable plan of reorganization for the benefit of all bondholders.

4. The plan of reorganization worked out by the committee themselves and propounded by the court was in fact a fair and equitable plan of reorganization and constituted a proper construction of the trust under which the premises in question are held.

5. Fees were properly allowed under the terms of the trust deed for the construction of the trust.

6. Since all bondholders had a right to appear the proposed exchange of securities was not in violation of the Federal Securities Act of 1933.

From a reading of the pleadings and evidence in this case, it appears there are more officials in connection with this foreclosure than we have been privileged to encounter in any former suit. There is a trustee, a successor trustee, a successor to the successor trustee and in addition thereto there is also a Consolidated Bondholders' Committee composed of seven members. Also there are four members of a certain Bondholders' Protective Committee. In addition to that there are four persons named as members of the Bond & Mortgage Bondholders' Committee and

also four persons are named as members of the Bondholders' Protective Committee. Three persons are named as trust managers. Counsel for these various persons and groups, as well as the master in chancery, are asking for fees aggregating $6,500 as a prior lien on the property and further asking that the property involved be taken from the bondholders and that the lien of the bondholders be decreed as personal property, and further asking that some of the persons named be appointed for a term of 15 years to look after the property, and that a provision be made as to fees to be paid during that period.

The evidence, upon which the allowance of fees was made, does not set forth a statement as to the time consumed by claimants in performing the work for which they now seek to be paid. This court has no way of knowing whether the time spent in such alleged work required a day, a week, a month, or a year. In fixing fees of any kind one of the requisites is that the court be furnished competent evidence as to the amount of time consumed in performing said services. It was error to allow these fees based on the evidence submitted. *Otterbeck v. Larson,* 197 Ill. App. 310.

From the record before us the plan of reorganization does not set forth the number of nondepositing bondholders nor does it state their interest, neither does it show that they received a notice of the proposed plan, or that the bondholders whom it is claimed are represented by a committee, received such notice. The difficulty with this situation, as we view it, is that no plan of reorganization was complete or submitted at the time of the original foreclosure and sale.

In *First Nat. Bank of Chicago v. Bryn Mawr Beach Bldg. Corp.,* 365 Ill. 409, which was one of the first reorganization cases to be passed upon by our Supreme Court, it was said:

"In these cases it has been recognized that where large properties, as to which rights and relations are

complicated, are sold at foreclosure sale, such sale, disconnected with a plan of re-organization, is likely to prove disastrous, as it rarely obtains for the property any approach to a fair price and often enables a financially strong group to gain by combined action and unfair advantage over those who do not have the means to protect the sale. And so these courts of equity have withheld the sale of the mortgaged property under the protection of possession by a trustee or receiver appointed by the court or acting under the terms of the trust deed, until such time as a sale might be had as a step in the re-organization of the concern. For this purpose the court takes jurisdiction to consider the fairness of the plan proposed. This, as we understand it, has been the underlying purpose of the exercise of equitable jurisdiction in cases of this character. *First Nat. Bank v. Flersham,* 290 U. S. 504.''

Care should be exercised by the chancellor in passing upon and deciding the various questions which arise when reorganization plans are presented for consideration. In the original foreclosure in the instant case, no money was paid nor were any bonds offered as part of the purchase price, but in some way which is not explained, the title was vested in the trustee as an individual, so that the nondepositing bondholder could not receive any part of the proceeds of said sale as there were no proceeds.

As this court said in the *First Nat. Bank of Chicago v. Bryn Mawr Beach Bldg. Corp., supra:*

''Appellants say the trust deed does not provide for a re-organization plan; that their rights are contract rights, and they are entitled to have the property sold at the highest bid and the proceeds distributed, and that under the plan proposed their contract rights are violated, for they are to be either forced into an unconscionable plan or 'frozen out.' Certainly, there can be no violation of contract rights arising out of an assumption of jurisdiction of the re-organization plan

by a court of equity. No one is required to join the depositing committee. The sale has been decreed, and all who do not desire to join the plan may take their share of the proceeds in cash. If the plan is unfair or appellants are in danger of being 'frozen out,' a court of equity should extend its aid to those who, by reason of their numbers and widely scattered abodes, are unable to protect themselves against an unconscionable plan or a scheme to prevent the sale of the property at a fair price."

There appears to be no reason why the lien of the bondholders should have been decreed to be personal property. It is claimed that the court had no authority to change the "contract rights" of the bondholders to personal property. Without passing upon the latter question, it is sufficient to say that the necessity for such a decree does not appear. At the time of the entry of the decree the bondholders' committee appeared and objected to the entry of the decree and asked to be heard, which request was denied. This was error. Particularly in cases of this kind, we think sufficient latitude and time should be extended to all counsel so that the court may hear what they have to say when it comes to a disposition of their property.

It further appears that the depositing bondholders, consisting of some 51 per cent of the entire issue, were objecting to the plan, and as was said in the case of *First Nat. Bank of Chicago v. Bryn Mawr Beach Bldg. Corp.*, 365 Ill. 409: "The court is concerned with the fairness of the bid as to those bondholders who have not adopted the plan. In this it must be borne in mind, however, that non-depositing bondholders are not to be aided in an effort to create a maneuvering value for their bonds or give them a nuisance value by attempting to obstruct re-organization."

No evidence was offered as to the income of this property, past or present, nor is it shown what the expenses have been in the past regarding operation of the building. The decree directs that the trustee

perfect the title, although the master has allowed the sum of $2,500 to the attorney for the trustee for services in perfecting the title and for representing him in these proceedings to construe the trust. Reliance is made by appellee upon the provisions of the decree which was entered in 1935, which was a bill for an accounting against Firebaugh and E. Ray Grant and which resulted in the court appointing Tudor as trustee. In that decree the court made the following reservation:

"That this Court retains jurisdiction of the Successor Trustee and of the premises above described and of the parties hereto for the purpose of further instructing the Successor Trustee in the administration of his trust." And the court made the further finding: ". . . but that the interest of the holders of said bonds and interest coupons shall consist solely of an interest in and to the proceeds from the administration or disposition of said premises, and shall constitute solely personal property, and the holders of said bonds and interest coupons shall have and do have no right, title or interest in or to said premises above described or any part thereof."

We are unable to see how the court could retain jurisdiction for the purpose of passing upon a plan of reorganization, as was attempted in the instant case. Nor do we see how the court would have a right to change certain interests in real estate into personal property affecting all the bondholders whose bonds under the law as *cestui que trustents* in the original trust deed, gave them an interest in the real estate. It is not part of the function of a court to instruct trustees, except where a trustee may apply to the court when there is some doubt as to his power or as to the rights or duties of the parties. There is no showing here that there is any ambiguity as to the powers and duties of the trustee.

In speaking of a trustee's right to apply to the court for assistance, in the case of *Warner v. Mettler*, 260

Ill. 416, the court at p. 421, said: "He must be honestly in doubt as to the proper construction of the instrument under which he is acting, or as to the disposition of the funds in his hands, or the course of action that he ought to take in any particular case, in order to authorize his application to a court of equity for aid and direction."

In the case of *Chicago Title & Trust Co. v. Chief Wash Co.*, 368 Ill. 146, the court at p. 153 said: "To determine this question a review of the pertinent provisions of the trust deed is essential since a trust itself constitutes the charter of the trustee's powers and duties. From it he derives the rule of his conduct, and it not only prescribes the extent and limit of his authority, but also furnishes the measure of his obligations. (3 Pomeroy's Eq. Jur. (4th ed.) sec. 1062.)"

We have been unable to find anything which tends to show that the trustee or the owners of these bonds contemplated changing the real estate into personal property as the decree provides.

The trustee purchased the property without producing any bonds or making any cash payment for the benefit of all bondholders and the Consolidated Bondholders' Committee representing 51 per cent of the bonds, objected to the entry of the decree. By this plan, creating the trust for 15 years, the dissenting bondholders could not take their share of the value of the property and were prevented from reducing their interests to cash. We do not think the court should at the request of the trustee and without the knowledge of the bondholders, or without such authority being contained in the original trust deed, by which the bondholders could avail themselves of their rights, enter another decree to liquidate the property by petition. By the terms of the decree the bondholders could not remove the trustee until after the 15-year period had expired, and further provides that the trustee may be removed for cause only, and deprives the court of

jurisdiction to change the provisions if not found equitable or satisfactory.

As to the authority of the trustee to borrow $6,500 in order to pay the costs and fees, this does not seem to be equitable or fair, nor should such amount be chargeable against these nondepositing bondholders who have not been notified of this proceeding. The bondholders have received nothing during the past 15 years. Nothing appears in the record to show the value of the property.

We have not been advised nor have we been able to discover just how this trustee could borrow money upon this estate. We have not been able to find anything in the trust deed authorizing it, which trust deed is the charter of his powers, and such powers cannot exceed the limits placed therein.

In the case of *Wahl v. Schmidt*, 307 Ill. 331, the court at p. 339, said:

"A trustee cannot create a lien on the trust estate in favor of a creditor, or charge the trust estate even by his contract, without express authority given by the instrument creating the trust."

In the case of *Austin v. Parker*, 317 Ill. 348, the court at p. 353, said:

"A trustee cannot create a lien on the trust estate in favor of a creditor, or charge the trust estate even by his contract, without express authority by the instrument creating the trust."

And in *Chicago Title & Trust Co. v. Robin*, 361 Ill. 261, there was no express provision in the deed authorizing the trustee to bid at the sale for and on behalf of all bondholders, and it sought to compel the trustee to bid at the sale for and on behalf of all the bondholders. The court in limiting the powers of the trustee to the language of the trust deed said on pp. 266, 267: "The trust deed and bonds constitute a contract between the bondholders themselves, between them as a class and the Robins and the trustee, for they were

made at approximately the same time as a part of one transaction. The general rule is that they should be construed together as a single instrument. (*Oswianza v. Wengler & Mandell,* 358 Ill. 302; . . . The language of the contract, by implication, does not clothe the trustee with power, under the guise of a right, duty or obligation, to bid, as a necessary or incidental act, in order that it may carry out the express objects of the contract. The powers granted to a trustee in a deed of trust are not liberally construed and their exercise must be consonant with the terms of that instrument. . . . This court does not have the power to import into a contract other or additional provisions. To do so would be making a new contract for the parties. (*Burt v. Garden City Sand Co.,* 237 Ill. 473.) We cannot construe a contract along the line of what we might believe would be a better contract for the parties to make, as equity vests no wide discretion in the chancellor such as would permit him to disturb contract rights of property. (*Merchants Loan and Trust Co. v. Chicago Railways Co.,* 158 Fed. 923, C. C. A. 7th, 1907.) A contract right is a property right. (*Kneeland v. American Loan and Trust Co.,* 136 U. S. 89, 34 L. ed. 379.) Since the rights, duties and obligations of the trustee were contained and defined solely in the trust deed, its duty as trustee was simply to sell the property to satisfy the debt. *Darst v. Bates,* 95 Ill. 493.''

In referring to all the bondholders, the decree found: ''. . . and would therefore, be detrimental to the interests of the owners and holders of said bonds and/or interest coupons; that the interests of all such owners and holders of said bonds and interest coupons in nowise conflicts with the interests of E. Ray Grant, Successor Trustee under said Trust Deed; . . .''

We do not see how a trustee can faithfully represent the interests of the *cestui que trustents,* if by the terms

of said decree the interests of the trustee shall be superior to the rights of the bondholders, and at the same time it is required by the terms of the decree to protect the interests of the trustee.

In addition to what we have said, we are unable to find the basis upon which the decree finds:

"(12) . . . that the proceedings brought herein were brought on behalf of each and every owner and holder of the said bonds and/or interest coupons, and as representative of their respective interests, . . . "

The decree further states:

"(14). And now comes the following named persons, to-wit:

> John W. Guskay
> William Kessler
> John Brown
> Charles Schutt
> Louis Nelson
> Francis McGovern

"comprising a certain consolidated bondholders' committee, and submit in evidence before this court bonds secured by said trust deed described, said bonds comprising the aggregate principal sum in excess of fifty-one per centum (51%) of the total outstanding bonds secured by said trust deed, and the Court having heard the evidence, and arguments of counsel, and being fully advised, FINDS that said persons are in fact the holders and owners of said bonds."

Does the word "committee" mean that they are agents for some undisclosed principal? The paragraph just quoted finds that the six persons named therein are the owners and holders of the bonds.

Later on in the decree it is stated:

"(21). The Court further finds, and it is ORDERED, ADJUDGED AND DECREED that the entire legal, equitable and beneficial title in and to the premises above described is vested in the Successor Trustee above named and appointed, free and clear of the claim of Russell

Firebaugh, and of every other person whatsoever in and to said premises.''

As before stated, just how the rights and interests of the unknown bondholders could, without their knowledge or consent, be changed to personal property, is not apparent. Nor, have any cases been cited by either counsel wherein the character of the subject-matter of the litigation has been changed from real estate to personal property. No attempt was made at this time and, evidently, it was not in the minds of the parties at the time of the execution of the trust deed, or at the time of the foreclosure of said trust deed, that anything like a reorganization plan should be submitted to the court for its consideration.

Other questions have been raised, but inasmuch as this case will have to be reversed and the cause remanded, we shall not pass upon them at this time.

In considering reorganization plans, with the manifold questions involved, in order that the parties in interest receive proper allowances and their problems have every consideration, a full hearing should be given to each interested party. We do not believe such was done in the instant case.

In conclusion we might add that we do not believe,

First, that the court had jurisdiction upon a petition to consider a plan of reorganization as shown by the present pleadings and evidence;

Second, that there is any power vested in the court whereby the court could change real estate into personal property without sufficient reason therefor; [The evidence does not relate to this subject.]

Third, that the fees mentioned are not supported by any evidence which would justify a court in allowing them; and

Fourth, that the plan as outlined is not fair nor have we sufficient data as a basis upon which to approve the same.

It may readily be seen in the instant case that the bondholders came into court to assert a right and they

now find, after many years of waiting for such rights to be determined, that the entire matter is postponed for a possible 15 years without notice in some instances to them and without any opportunity on their part to be heard. When an application was made to the court for an opportunity to be heard, this was denied.

For the reasons herein given the decree of the circuit court is reversed and the cause is remanded.

*Decree reversed and cause remanded.*

HEBEL, J., concurs.

BURKE, J., dissenting: The views expressed in the dissenting opinion in *Tudor v. Firebaugh,* 303 Ill. App. 467, are applicable to the case at bar.