Louis E. Nelson et al., Appellees, v. Paul F. Amling et al., Defendants. Estelle R. Firebaugh et al., Appellants.

Gen. No. 42,495.

Opinion filed June 16, 1943. Rehearing denied June 28, 1943.

FRANKLIN RABER, of Chicago, for appellants.

WHITTY & McGAH, SHERMAN & LEWIS and ARTHUR ABRAHAM, all of Chicago, for appellees.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiffs filed a complaint in their own behalf as Trustees under a Stock Voting Trust Agreement, made pursuant to and as part of a plan of reorganization adopted by the security holders and approved by the United States District Court in a proceeding there instituted for the reorganization of 839 Lake Street Building Corporation, against the owners of the Stock Voting Trust Certificates, issued to the security holders pursuant to the plan, asking the court to construe and interpret the agreement under which they were acting as Trustees, as granting to them the authority and power, in their discretion, to vote the shares of stock of the new corporation so held by them for the conveyance of all property acquired by the new corporation to Liquidating Trustees under a Liquidation Trust. Certain of the Voting Trust Certificate owners were personally named as defendants, as representatives of all, and the court prescribed the form of notice to be given to the owners of the Voting Trust Certificates of the pendency of the suit. This notice provided that the certificate owners might appear in the case and be heard on the matters in issue. In response to the notice certain of the owners of the Voting Trust Certificates entered their appearances and filed answers. The cause was heard by the chancellor on the complaint, answers and replication and on evidence adduced in open court, and a decree was entered construing the Stock Voting Trust Agreement as giving the Stock Voting Trustees power and authority, in their discretion, to vote the shares of stock for the conveyance of all the property of the new corporation to Liquidating Trustees under a Liquidation Trust, but the decree did not prescribe the form nor the terms and conditions of the Liquidating Trust Agreement, other than to direct that it should preserve the substantial rights and interests of the owners of

the Stock Voting Trust Certificates. From this decree the owners of the Stock Voting Trust Certificates have taken an appeal on the two principal grounds (1) that the court was without jurisdiction to construe and direct the plaintiff trustees on the proposition for which they sought the construction and direction of the court, and (2) that the court erred in construing the Stock Voting Trust Agreement as granting authority to the Trustees to vote the shares held by them for the conveyance of all the property of the corporation to Liquidating Trustees under a Liquidating Trust Agreement.

From the undisputed facts it appears that a corporation known as the 839 Lake Street Building Corporation held legal title to the real estate located at that address in Oak Park, Illinois. The premises were improved with a six-story apartment building, consisting of some 64 small apartments which were completely equipped with furniture, likewise owned by the corporation, and operated as an apartment hotel. There was an outstanding first mortgage bond issue in the amount of $252,700 and a second mortgage bond issue for $94,000, both secured by trust deeds conveying the property to trustees.

In November 1936 a proceeding was instituted in the United States District Court, under section 77B of the Bankruptcy Act, for the reorganization of the financial structure of the building corporation. The plaintiffs in the suit at bar, who constituted a bondholders' committee in the reorganization proceeding, and their attorneys, prepared and submitted a plan of reorganization of the debtor corporation which was adopted by the creditors and the debtor, and was confirmed by decree of the United States District Court on July 9, 1937. That plan provided for the organization of a new corporation under the Business Corporation Act of Illinois. (Ill. Rev. Stat. 1937, ch. 32, par. 157.1 et seq. [Jones Ill. Stats. Ann. 32.001 et seq.]),

by the name of Scoville, Inc., for the purpose of taking over all the assets and business of the debtor with a capitalization of $385,200, consisting of 3852 shares, to be divided into 2527 shares of Class A preferred stock of the par value of $100,940 shares of Class B stock of the par value of $100, and 385 shares of Class C stock of no par value. The Class A stock in the new corporation was issued to the first mortgage bondholders of the debtor corporation in full satisfaction of that debt; the Class B stock was issued to the second mortgage bondholders in full satisfaction of that debt; and the Class C stock was issued to the owner of the stock of the debtor corporation in full satisfaction of the equity of redemption.

As a further part of the plan of reorganization, the decree of the Federal Court provided for the delivery of the stock of the new corporation to five voting trustees, to be held for five years under a Stock Voting Trust Agreement, which was approved by the court and made a part of the plan. In furtherance of the plan plaintiffs caused to be formed under the Business Corporation Act of Illinois a new corporation named Scoville, Inc., whose charter provided that the duration of the corporation was to be perpetual. The new corporate charter prescribed the amount and character of the shares of stock to be issued, and the preferences, restrictions and special rights of each class. It provided that Class A stock shall bear noncumulative dividends of 3 per cent per annum, payable out of net earnings; that Class B stock shall bear noncumulative dividends of 1 per cent per annum, also payable out of net earnings; that Class A and B stock shall be redeemable, in whole or in part, by the corporation as the board of directors may from time to time determine; and it sets up a sinking fund out of net earnings for redemption purposes. Under this provision some 99 shares of Class A stock have been redeemed out of the net earnings of the operation of

the business, and dividends have been declared and paid on Class A and Class B stock.

In pursuance of the provisions of the plan, a Stock Voting Trust agreement was entered into on October 1, 1937, in which plaintiffs are named as Stock Voting Trustees. The preamble of this agreement states that the stock voting rights in connection with the stock are vested in the Trustees *in order to secure continuity and stability of policy and management.* Salient provisions of the agreement dealing with the subject of the termination of the Stock Voting Trust provide that the agreement shall terminate in five years, without notice or action on the part of the Trustees, but may be terminated at any earlier time by resolution of a majority of the Stock Voting Trustees, or upon written direction of the holders of 51 per cent of the Class A Voting Trust Certificates, and also prescribe a referendum by the Class A Certificate Holders for the extension of the Voting Trust Agreement beyond the period of five years. The agreement contains a provision that in the event of dissolution or a total or partial liquidation of the corporation, the assets are to be distributed among the Certificate Holders in the proportion of $87\frac{1}{2}$ per cent of the sum realized from the sale or liquidation to Class A stock, $7\frac{1}{2}$ per cent to Class B stock, and 5 per cent to the holders of Class C stock.

In May 1938 a final decree was entered in the United States District Court finding that the plan had been carried into effect and releasing its assets from the jurisdiction of the court, and since the reorganization proceeding was consummated, Scoville, Inc. has owned and operated the property as an apartment hotel. Books of account were opened and kept by the corporation, and as heretofore stated, dividends were declared on the first two classes of stock and some of the shares of Class A stock have been redeemed out of the net earnings of the operation of the business. Re-

turns for federal income taxes for 1938 and subsequent years were prepared and filed by the corporation.

It appears from the evidence that plaintiffs, in setting up the books of account of the corporation, valued the tangible assets, including land, buildings and furnishings, at a total of $393,342. The Commissioner of Internal Revenue, in checking the income tax returns filed, questioned the valuation of the property as fixed by the corporation for the purpose of taking credit for depreciation, and after examining certain available data as to the costs of the improvement, a compromise was effected by the commissioner and the auditor of the corporation whereby the value of the property as of October 1, 1937, the date that the corporation acquired the title under the reorganization, was fixed at $268,000. This reduction resulted in a substantial decrease in the amount of depreciation which the corporation was entitled to receive as a credit against income for income tax purposes, so that on a revision of the tax return the corporation was assessed additional income taxes for 1938, 1939 and 1940. From a computation by a certified public accountant introduced in evidence, it appears that the income tax for the year 1941 will probably exceed $2,000. In view of the mounting federal income taxes on the corporate property, plaintiffs conceived the idea, after an examination of the applicable provisions of the Revenue Law and authorities construing them under similar situations, that the income distributed or distributable to the beneficiaries under a liquidation trust would not be taxable to the trust, and that the operation of the trust, without the interposition of the corporate form, would, as they believe, result in substantial savings to the *cestuis que trustent;* and on oral argument their counsel reiterated the allegation of their pleadings that the purpose of the suit, asking the court to construe and interpret the Stock Voting Trust Agreement as granting them the authority and power, in their

discretion, to vote the shares of stock of the new corporation so held by them for the conveyance of all its property to Liquidating Trustees under a liquidation trust, was to effect substantial savings to beneficiaries through the avoidance of federal income taxes anticipated under a liquidation trust.

Plaintiffs claim to derive the power to vote the stock for the conveyance of the corporate property to the liquidating trust from Article III of the Stock Voting Trust Agreement, which reads:

"Until the Stock Voting Trustees shall have disposed of the shares of Capital Stock, pursuant to the provisions of this agreement, they shall, except as hereinafter otherwise provided, possess and in their discretion shall be entitled to exercise in person or by their nominees all rights and powers of absolute owners in respect of the Capital Stock of the Corporation held by them, including the right to vote thereon and to take part in and consent to any corporate or stockholders' action of any kind whatsoever and to receive dividends on said Capital Stock, and it is expressly understood and agreed, except as hereinafter otherwise provided, that the Certificate Holders shall not have any right in respect of any such Capital Stock held by the Stock Voting Trustees to vote or take part in or consent to or in any way control or limit any corporate or stockholders' action of the Corporation. The right to vote shall include the right to vote for election of directors and, except as hereinafter otherwise provided, in favor of or in opposition to any resolution or proposed action of any character whatsoever which may be presented at any meeting or which may require the consent of stockholders of the Corporation. Without, by enumeration, limiting such general right, it is understood that such action or proceeding may include the mortgaging and/or pledging of all or any part of the property and assets of said Corporation, the selling of any part of the

property and assets of the Corporation which shall be less than all or substantially all of such property and assets, the amendment or alteration of the certificate of incorporation and/or by-laws of said Corporation and the increase or decrease or change in classification of the Capital Stock of said Corporation, except as limited by the Charter of the Corporation. The Stock Voting Trustees shall not at any meeting of the stockholders of the Corporation, vote for the sale of all or substantially all of the property and assets of the Corporation unless written notice of the terms of said sale shall be given by mail to the registered holders of all the Stock Voting Trust Certificates outstanding hereunder (at the addresses furnished respectively by such holders to the Stock Voting Trustees), not less than twenty (20) days prior to the date fixed for the meeting of stockholders at which it is proposed to vote for the sale of all or substantially all of the property and assets of said Corporation, nor shall any such action be authorized if at or prior to the date fixed for said meeting the holders of Stock Voting Trust Certificates representing not less than 33⅓% of the Capital Stock of the Corporation then held by the Stock Voting Trustees shall in writing advise the Stock Voting Trustees of their objection and dissent thereto.''

The court, construing the foregoing article as expressly authorizing the trustees to make the proposed conveyance, found that ''the administration of said trust through a corporate form results in great burden of administrative detail involving the filing of numerous periodical reports with the state and federal government, requiring burdensome work, and results in heavy franchise, capital stock and income taxes arising merely out of the circumstance that said trust is administered through the corporate form; that no advantage whatever accrues to the beneficiaries by reason of the administration through a corporate

form; that the true intent and purpose of the reorganization of 839 Lake Street Building Corporation was to effectuate and facilitate the liquidation of the premises for the benefit of the outstanding certificate holders and the owner of the equity; that the true intent and purpose of the Voting Trust Agreement was to liquidate the premises for the benefit of the holders of the trust certificates under the trust agreement, and to distribute the proceeds in accordance with the terms of the trust agreement; that no advantage accrues to the holders of Voting Trust Certificates by virtue of the operation through a corporate form, but on the contrary the administration of the trust through a liquidation trust would more accurately reflect the true intent and purpose of the Stock Voting Trust Agreement; [and] that it is to the best interest of the Voting Trust Certificate holders that the premises be conveyed to a liquidation trust" which shall "preserve in every detail the rights of the holders of the Stock Voting Certificates."

It is extremely doubtful whether the enterprise can escape income tax liability through the proposed change, since under the facts and circumstances of the existing organization the corporation will, in all likelihood, continue to be assessed for income taxes until it is dissolved and the property distributed, either in cash or in kind, to the beneficial shareholders. *Swanson v. Commissioner of Internal Revenue*, 296 U. S. 362; *Helvering v. Combs*, 296 U. S. 365; *United States v. Rayburn*, 91 F. (2d) 162. The courts in those cases evidently proceeded on the theory that for income tax purposes the character of the enterprise, as to whether it is an association for profit or a liquidating trust, is determined from its history, its purpose as shown by the instrument creating it, the business it conducts, the disposition of the income, and the efforts made to dispose of the assets and distribute the proceeds. In view of plaintiffs' allegation and admis-

sion of the reason assigned for the proposed change, the Commissioner of Internal Revenue or the court that may be called upon to pass on the question, is not likely to deviate from the established practice of taking into account the character, history and purpose of the corporation, and resolve the question in favor of plaintiffs. Until the property is actually liquidated, no matter by what name the corporation may be designated, it will still be operating a hotel or an apartment building through its manager and employees, for which it has purchased furniture, bedding, silverware and other equipment necessary for the operation of the enterprise, and through which it has realized a profit, paid dividends to its shareholders, and retired some of its stock.

However, aside from the foregoing considerations, the principal question presented is whether the court's construction of the agreement, in effect changing the existing plan of reorganization and substituting an entirely different plan, can be approved under the circumstances presented. The decree found that "the true intent and purpose of the Voting Trust Agreement was to liquidate the premises for the benefit of the holders of the trust certificates under the trust agreement, and to distribute the proceeds in accordance with the terms of the trust agreement," but plaintiffs do not adopt this theory of the case; they stand squarely on the contention that Article III expressly authorizes and empowers the Stock Voting Trustees to make the proposed conveyance, and that no limitations will be implied upon an express power given to the Trustees, although expressed in general terms. Specifically they invoke their authority from that part of Article III which provides that they shall "be entitled to exercise . . . all rights and powers of absolute owners in respect of the Capital Stock of the Corporation held by them, including the right to vote . . . in favor of or in opposition to any resolution

or proposed action of any character whatsoever . . . or which may require the consent of stockholders of the Corporation.'' Basing their case on these provisions, they argue that the ''principal action of a corporation which would require the consent of the stockholders would be the disposition of all or substantially all of the property of the corporation,'' and assuming, as they say, ''in the construction of this instrument that we are going to follow its express terms, it is clear that the stock voting trustees have precisely the power which is given to them by the express words of the instrument, that is to say, the power to vote the stock of the corporation in favor of or in opposition to any resolution or proposed action which may require the consent of the stockholders of the corporation,'' therefore ''the only question presented then is whether or not the stockholders of the corporation may authorize the disposition of all or substantially all of the property and assets of the corporation.'' They answer the question posed by concluding that ''if the holders of all of the stock of the corporation have that right, then that right is vested in the stockholding trustees under the express provisions of Article III of the Trust Agreement.''

We do not think the agreement, taken as a whole, as it must be, and considered in the light of the plan for reorganization pursuant to which it was drawn, and the purpose for which the voting trust was created, is susceptible of either the construction decreed by the court or that sought to be given it by plaintiffs. There is no support for the finding that the true intent and purpose of the agreement was ''to liquidate the premises for the benefit'' of the beneficial shareholders, ''and to distribute the proceeds in accordance with the terms of the trust agreement.'' The plan submitted to the United States District Court by plaintiffs who then constituted the bondholders' committee, assented to by the shareholders, and approved by the court, con-

templates no such primary purpose. It was, rather, a constructive plan designed to reorganize the debtor corporation so as to enable it to carry on its business through a change in the financial structure of the enterprise, which modified the rights of shareholders through the issuance of new securities, and provided for an agreement vesting in the trustees the voting rights in respect to the stock "in order to secure continuity and stability of policy and management," and not for purposes of liquidation. Nothing could express more clearly the purpose and intent of the plan and agreement than the preamble thereof; and the carefully prescribed provisions for conducting the enterprise as a going concern, the payment of dividends, retirement of stock, and the duration and renewal of the trust, all indicate that it was the purpose and intent of the parties who submitted the plan, the shareholders who assented thereto, and of the court which approved it to continue the debtor corporation and preserve the enterprise. Nowhere in the plan, the Trust Agreement, or in the articles of incorporation of the new company, is there a provision requiring the sale of the corporation within any period of time for the benefit of the certificate holders. The only liquidation mentioned is a voluntary sale of assets which required the approval of the beneficial holders, and not a sale through a liquidation trust, the dissolution of the corporation and the distribution of the proceeds among security holders. If liquidation had been the true intent and purpose of the plan and the agreement entered into pursuant thereto under the direction of the court, it is difficult to understand why such elaborate provisions should have been made to secure continuity of the enterprise. If liquidation had been contemplated in the manner sought, the court could have rejected the plan, dismissed the petition and directed proceeding with bankruptcy under the provisions of Title 11, United States Code Annotated,

sections 636–638 (Chandler Act of June 22, 1938). The fact that a comprehensive plan for continuing the enterprise was confirmed and consummated is a fair indication that liquidation was not intended. Moreover, there is nothing of record to indicate that liquidation is necessary, advisable or desired by the certificate holders. The property is self-sustaining and earning dividends.

These conclusions are likewise applicable to the contention made by plaintiffs that they were given express power to make the proposed conveyance of the corporate property without the approval of the certificate holders, and thereby enabled to change the corporate structure to a liquidation trust. In the performance of their duties as trustees they are not required to vote upon the proposition for the transfer, and there is nothing in the agreement that suggests such a course of conduct. Their powers should be limited to voting the stock for corporate purposes, for the continuance of the enterprise, and not for its liquidation. They have no financial interest in the property or in the shares of stock held by them as trustees. The beneficial owners are not complaining about the existing plan or seeking to have their property conveyed to a liquidation trust for the purpose of sale and distribution of the proceeds, but are denying the proposed intent and purpose of the plan, and are standing upon the provisions of the agreement and plan as expressing the intent for reorganization to which they assented and which the United States District Court approved. Plaintiffs' claim, and the finding in the decree that the proposed conveyance would be to the best interest of the voting trust certificate holders, are immaterial. Neither the property nor the trust is being administered by the court in which the decree was entered, and therefore it had no power or right to determine what is best for the security holders. *Tudor v. Firebaugh*, 303 Ill. App. 452.

In *Merchants' Loan & Trust Co. v. Chicago Rys. Co.,*
158 Fed. 923, a proceeding was instituted to compel the
security holders of the street railway lines to accept
the terms and conditions of an ordinance of the city
of Chicago in connection with the reorganization. The
circuit court of appeals, indicating that it had little
hesitancy in stating that the ordinance tendered by
the city was reasonable and fair and that as a business
proposition it would be wise for the parties to accept
it, held that "the court does not make contracts for
parties. . . . although it may believe that a party
insisting upon those rights is probably, or even cer-
tainly, bound to suffer loss, yet while he insists it must
protect him in his insistence. There is no wide dis-
cretion vested in the chancellor which permits him to
disturb contract rights—rights of property."

The plan adopted in the instant case was submitted
by plaintiffs as a bondholders' committee. An exami-
nation of the plan and the circumstances surrounding
the reorganization discloses that the debtor owned and
operated a large apartment hotel which was completely
furnished and serviced by it. The value of the prop-
erty must have been in excess of the mortgage indebt-
edness, and it was undoubtedly contemplated that the
indebtedness could be paid out of the net earnings of
the business conducted by the debtor. There is noth-
ing in the evidence to now indicate that this cannot be
accomplished. The consummation of the plan, of which
the stock voting agreement was a part, gave the cer-
tificate holders substituted securities and an agree-
ment defining their rights. To brush aside the plan
and subvert the intent and purpose of the agreement
so as to allow the trustees to substitute a liquidating
trust for the corporate form, would, as defendants'
counsel says, change the existing agreement so that
plaintiffs could take over the property, manage it for
an indefinite period and exclude defendants, who are
the real owners, from exercising any control over the
property.

In *Re Firstbrook Boxes, Ltd.,* [1936] 1 D. L. R. 92, the voting trustee made application to the court for direction relative to its power, under a voting trust agreement, to vote the shares of stock at a shareholders' meeting in favor of the confirmation, ratification and adoption of a resolution directing the sale of the company's business, but the court held that ''Unless expressly declared by the instrument creating a voting trust, . . . no authority can be said to be conferred to terminate the undertaking in respect of which the right to vote is given. . . . that it is not within the contemplation of shareholders or intended shareholders when directing or consenting to the issue of shares to a trustee, to invest that trustee with power to terminate the enterprise by a sale of the undertaking.''

In *In re Wedgewood Hotel Co.,* 125 F. (2d) 327, the petitioner sought to do the converse of what plaintiffs propose to do in the instant case. After a plan of reorganization providing for the liquidation of the debtor property under a liquidation trust agreement had been adopted, a security holder petitioned the court in the reorganization proceeding to modify the plan by construing a part of the agreement as providing for the organization of a new corporation to take over the assets and property of the debtor and to issue stock in the new corporation in lieu of the bonds of the debtor. The trustee challenged the jurisdiction of the court over the subject matter, and appealed from its judgment. The circuit court of appeals, assuming that the district court had an implied or inherent jurisdiction to enforce its final decree and to aid in carrying out the plan, said that ''the relief sought was foreign to, and in contravention of, the plan of reorganization as assented to by the creditors and approved by the court. In fact, the petition plainly discloses that another and different plan of reorganization was proposed. If consummated, the result would be a new plan of reorganization, not assented to by

the creditors, superimposed upon the plan, assented to and confirmed.''

Aside from the foregoing considerations, the decree indicates that no liquidating trust agreement is embodied in the decree, nor does it specify the terms and conditions of any such proposed agreement other than to say that it shall preserve the substantial beneficial rights of the certificate holders. The decree merely authorized plaintiffs to make and enter into a liquidation trust agreement wherein they will presumably be the trustees, which in their judgment preserves such rights. That would leave the shareholders with substantially no protection, except possibly through means of further litigation, to determine whether the terms of the liquidating trust agreement entered into by plaintiffs with themselves, preserved the substantial beneficial rights of the certificate holders.

In view of our conclusions as to the construction placed upon the agreement by the court, we deem it unnecessary to discuss the jurisdictional question raised by defendants.

For the reasons indicated, the decree of the superior court should be reversed and the cause remanded, with directions to dismiss the complaint for want of equity, and it is so ordered.

*Decree reversed and cause remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.